| | |
|---|---|
| DISTRICT COURT, WELD COUNTY, STATE OF COLORADO<br>901 9th Avenue, Greeley, CO 80631 | DATE FILED: October 23, 2018 3:36 PM<br>FILING ID: 9247D9B2883B1<br>CASE NUMBER: 2018CV30937 |
| **BALEIGH RHOADS**, and<br>**SARINA MANEOTIS**,<br><br>Plaintiffs,<br><br>v.<br><br>**JBS USA, LLC,**<br>Defendant. | ∆  **COURT USE ONLY**  ∆ |
| Plaintiffs Attorney:<br>Kelli Riley, Esq., #44828<br>Riley Law, LLC<br>2017 West 9th Street<br>Greeley, CO 80631<br>Phone Number: (970) 515-5932<br>Fax Number: (970) 797-1226<br>Kelli@rileylawllc.com | Case Number:<br><br><br><br><br><br>Division:<br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiffs, Baleigh Rhoads and Sarina Maneotis, by and through their counsel, Kelli Riley of Riley Law LLC, hereby file this Complaint and Jury Demand against Defendant, JBS USA, LLC ("JBS"), and in support thereof, Plaintiffs state as follows:

## I.     INTRODUCTION

1.     This is a sex and pregnancy discrimination case brought by Plaintiffs Baleigh Rhoads and Sarina Maneotis against Defendant JBS. Plaintiff Rhoads was promoted up the ranks at JBS during her approximately five-year tenure, until she gave birth to her son in January 2017 and exercised her rights under the Colorado Anti-Discrimination Act, as amended, C.R.S. §§ 24-34-301, *et seq*. ("CADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2612, *et seq*. ("FMLA"). *Less than three months* later, Plaintiff Rhoads was demoted, passed over for promotions, and constructively terminated. Plaintiff Maneotis was an excellent employee for JBS for four years but was passed over for two promotions and subjected to retaliation after she

1

disclosed that she was pregnant and exercised her rights under CADA and the FMLA. Plaintiffs bring claims of sex and pregnancy discrimination in violation of CADA, discrimination and retaliation in violation of the Pregnant Workers Fairness Act Amendments ("PWFA") to CADA, and for unlawful interference and willful retaliation in violation of the FMLA.

## II. PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Baleigh Rhoads is and was a resident of the State of Colorado and performed work for Defendant in Weld County during all relevant times.

3. Plaintiff Sarina Maneotis is and was a resident of the State of Colorado and performed work for Defendant in Weld County, Colorado during all relevant times.

4. Plaintiffs have exhausted all administrative prerequisites to the filing of this action.

5. Defendant JBS USA, LLC is and was at all relevant times a Delaware limited liability company licensed to and doing business in the State of Colorado. Its principal offices are located at 1770 Promontory Circle, Greeley, CO 80634.

6. At all relevant times, Defendant was an "employer" within the meaning of CADA and the FMLA.

7. This Court has jurisdiction over this matter pursuant to COLO. REV. STAT. §§ 13-1-124(1).

8. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c) because Defendant is a company doing business in Weld County, Colorado, and all of the events complained of herein occurred in Weld County, Colorado.

## III. FACTUAL ALLEGATIONS

*Plaintiff Rhoads*

9. Plaintiff Rhoads worked for Defendant from May 2012 until April 2017.

10. Plaintiff Rhoads was initially hired as a Customer Service Representative. Based on her good job performance, she was promoted multiple times over the next five years, ultimately into the Recruiting Manager position that she held in early 2017 before she gave birth to her son.

11. In 2015, Plaintiff Rhoads' was working as a Recruiter position that required some overnight travel. She took two trips during her time in that role, one in 2015 and one in 2016.

12. Plaintiff Rhoads decided that she did not want to travel extensively as part of her job, and she expressed this to her supervisor at the time. In response, Defendant agreed to allow Plaintiff Rhoads to take the Recruiting Manager position at JBS, which did not require her to travel.

13. On January 28, 2017, Plaintiff Rhoads gave birth to her son.

14. Plaintiff Rhoads did not intend to take leave from work after her son was born. She expressed this to both her supervisor Matt Goodyear and Human Resource Generalist, Emily Galyardt. Neither Mr. Goodyear nor Ms. Galyardt gave Plaintiff information about FMLA leave. Instead of leave, Plaintiff Rhoads requested an accommodation by way of permission to work from home for twelve weeks after her baby was born while she recovered from childbirth. In November 2016, her direct supervisor, Matt Goodyear, granted that request. Accordingly, Plaintiff Rhoads began working from home after her baby was born.

15. Without warning, on February 13, 2017, just *two weeks* after Plaintiff Rhoads had her baby, Chris Gaddis, Head of Human Resources, called her to inform her that she was being demoted from Recruiting Manager, a position that she had held since July 11, 2016, to Recruiter, a position that would require significantly more travel.

16. Specifically, Mr. Gaddis explained that Plaintiff Rhoads would need to be available to travel between 12 and 16 weeks per year, including significant overnight travel for as many as eight consecutive weeks at a time.

17. Mr. Gaddis did not explain why Plaintiff Rhoads was suddenly being demoted from her management role into a non-management role and required to travel extensively. Plaintiff Rhoads was concerned by the abrupt change in her job responsibilities, especially because Defendant knew Plaintiff Rhoads did not want a position that required significant travel, and because she was a new breastfeeding mother with an infant at home which would make traveling very difficult for her and her baby.

18. Then, on February 24, 2017, Plaintiff's new supervisor, Brad Sievers, Human Resources Director and Analytics and Compensation Manager, called Plaintiff Rhoads and informed her that working from home "was not an option" and was not approved by Mr. Gaddis.

19. Mr. Gaddis later that same day claimed that he thought she was on a leave of absence since the birth of her child in January.

20. Mr. Sievers also claimed that working from home was against company policy.

21. Upon information and belief, Defendant has a policy, procedure or actual practice of allowing non-pregnant employees to work from home.

22. Later in the day on February 24, 2017, Plaintiff Rhoads was informed by Mr. Gaddis and Mr. Sievers that they had scheduled a meeting with her for February 27, 2017.

23. On February 27, 2017, Plaintiff Rhoads went to the office and met with Briana Cole, Director of Compliance, and Mr. Gaddis. During the meeting, Plaintiff Rhoads was informed that she either needed to return to work in the office immediately or go on leave.

24. Plaintiff Rhoads had not requested to take leave from work and did not desire to do so. Instead, she wanted to continue to work, and she could have done so with a reasonable accommodation of working from home while she recovered from childbirth.

25. Defendant did not give any explanation as to why it would not provide the accommodation, nor did Defendant attempt to engage in an interactive process with Plaintiff Rhoads to discuss alternative options that would allow her to continue working while recovering from childbirth.

26. During that meeting, it was decided that Plaintiff Rhoads would go on FMLA leave.

27. Plaintiff Rhoads felt her team needed support during that specific time because it was a busy time for her department, and therefore did not want to take leave. Plaintiff was not able to immediately return to work, either, because she was not released by her doctor to return to the office.

28. Defendant backdated the start date of Plaintiff's leave to January 30, 2017, despite the fact that Plaintiff Rhoads had been working during much of that time.

29. Later in the day on February 27, 2017, Plaintiff Rhoads was instructed by Mr. Gaddis, Juriana Sperandio, head of Organizational Development, and Brittany Gratton, Manager of Organizational Development, to inform her former team that she would no longer be a manager. She was also informed at that time that she was now expected to travel between 12 and 16 weeks per year.

30. Plaintiff Rhoads also learned that Ms. Gratton had recently been promoted into a position that was similar to Plaintiff's Recruiting Manager position. Ms. Gratton was being paid nearly twice what Plaintiff had been paid.

31. Plaintiff Rhoads also learned that another individual, Liudys Montano, had been promoted into another management position that was created when Plaintiff Rhoads was demoted. Plaintiff Rhoads had more experience that Ms. Montano.

32. Plaintiff Rhoads was not considered for either position, despite her qualifications for both. Upon information and belief, neither position requires the extensive travel that the Recruiter position Plaintiff Rhoads was demoted to required.

33. Plaintiff Rhoads returned to work after her FMLA leave on or April 10, 2017. Upon her return, her demotion to the Recruiting position went into effect along with the expectation that she travel extensively, which she was not able to do given her obligations as a breastfeeding new mother. Ms. Rhoads also did not have child care arrangements in place for extensive overnight travel.

34. Under the circumstances, Plaintiff Rhoads had no other choice but to terminate her employment, which she did on or about April 21, 2017.

35. Upon information and belief, Plaintiff Rhoads was replaced in the Recruiter position by an individual who does not have young children.

*Plaintiff Maneotis*

36. Plaintiff Sarina Maneotis is an accomplished and educated woman with a Ph.D. in industrial/organizational psychology from Pennsylvania State University.

37. Plaintiff Maneotis was employed by Defendant from 2014 until September 2017 as an Analytics Project Manager. In that role, she designed and created surveys and analyzed organizational data for Defendant's Human Resources department.

38. Plaintiff Maneotis reported to Brad Sievers, Human Resources Director and Analytics and Compensation Manager. Mr. Sievers oversees the analytics and compensation team for Defendant.

39. During her employment, Plaintiff Maneotis built a solid performance record. She consistently received excellent performance reviews and received two performance-based pay increases. Mr. Sievers commended Plaintiff Maneotis for being a dependable and conscientious employee.

40. However, Mr. Sievers demonstrated discriminatory animus toward Plaintiff Maneotis and other women in the workplace because of their status as mothers.

41. For example, in fall 2016, Plaintiff Maneotis expressed a desire to travel less for her job because she was breastfeeding her first child and the demands of work-related travel would make breastfeeding difficult. Mr. Sievers acted displeased and suggested that Plaintiff Maneotis seek therapy.

42.     On another occasion, Plaintiff Maneotis expressed to Mr. Sievers her concerns about her workload and how much time she was spending working from home at night, which interfered with the time she has to spend with her family. Mr. Sievers remarked that Plaintiff Maneotis should "quit trying to put her job in a box," and suggested that Plaintiff and her fellow female co-workers' "attitudes" were not positive enough and that they needed to "get therapy" if they felt stressed about their workloads.

43.     On another occasion, Mr. Gaddis remarked that the years of service a female employee was being recognized for should really be cut in half because that employee worked a scheduled that allowed her to leave around 4:00 p.m. so that she could collect her children from school.

44.     In mid-February 2017, Plaintiff Maneotis advised Mr. Sievers that she was pregnant and expecting her second child. In response, Mr. Sievers asked Plaintiff Maneotis if she was done having children or if she planned to have more.

45.     Subsequently, she told Mr. Sievers that she was unable to travel because of her pregnancy. Mr. Sievers was visibly irritated by Plaintiff Maneotis' remark.

46.     Before she started her maternity leave, Mr. Sievers forced Plaintiff Maneotis and other female employee to watch a TedTalk during a meeting. As he pulled up the video, he paused over another video on the topic of orgasms. The topic of the video was visible to Plaintiff Maneotis and her colleagues. Mr. Sievers remarked, "That's the one we're watching," making Plaintiff Maneotis and her colleague uncomfortable.

47.     The TedTalk that Mr. Sievers did show emphasized the importance of women seeking therapy and allowing themselves to be vulnerable. The clear implication was that Mr. Sievers believes that women, Plaintiff Maneotis included, tend to have mental health issues for which they need therapy.

48.     In March 2017, Plaintiff Maneotis unexpectedly needed to be out of the office because her child was ill and needed to be hospitalized. When her child was discharged from the hospital, Plaintiff Maneotis came down with the flu. Throughout the time that she was out of the office, Mr. Sievers sent repeated text messages to Plaintiff Maneotis pressuring her to call in to meetings and to come into the office.

49.     When she returned to the office, Mr. Sievers demanded an update on her and her son's health conditions. Plaintiff Maneotis expressed reluctance to divulge these personal details. In response, Mr. Sievers grew angry with Plaintiff Maneotis and sent her home for the day.

50.     Plaintiff Maneotis later learned that Mr. Sievers had downgraded her performance rating immediately after that conversation.

51. Subsequently, in May 2017, Mr. Sievers complained that Plaintiff Maneotis had a bad "attitude" and demanded that she improve it. When Plaintiff Maneotis asked for an example of what he meant by her having a bad attitude, Mr. Sievers claimed that Plaintiff Maneotis did not make eye contact with him and smile enough.

52. When Plaintiff Maneotis expressed interest in two promotional opportunities with Defendant, Mr. Sievers would not allow her to apply for those opportunities. He told Plaintiff Maneotis that even if she applied, she would not be considered for the position because she did not have enough management experience. However, several weeks later, Defendant offered the position to a male candidate with no management experience and fewer years of experience in analytics than Plaintiff Maneotis.

## IV. CLAIMS FOR RELIEF

### First Claim for Relief
### Sex/Pregnancy Discrimination in Violation of CADA
### (Both Plaintiffs against Defendant)

53. Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

54. Plaintiff Rhoads and Plaintiff Maneotis are both women and, as such, are both members of the class of persons protected from sex discrimination under CADA.

55. Plaintiff Rhoads and Plaintiff Maneotis were both pregnant during some or all of the relevant time periods and, thus, were both members of the class of persons protected from pregnancy discrimination under CADA.

56. At all relevant times, Plaintiffs performed the functions of their jobs competently and were qualified for their positions with Defendant.

57. Plaintiff Rhoads was passed over for promotions, demoted, the terms and conditions of her employment were materially modified, and she was ultimately constructively terminated because of her sex and/or her pregnancy. Plaintiff Maneotis was passed over for promotion because of her sex and/or her status as a pregnant woman.

58. Plaintiffs' sex and/or their status as pregnant women were the motivating factors in Defendant's conduct causing Plaintiffs' damages.

59. Defendant is liable for the acts and omissions of its agents and employees. Defendant, by and through its agents, discriminated against Plaintiffs on the basis of their sex and/or their status as pregnant women.

60. As a result of Defendant's conduct, Plaintiffs have suffered significant injuries, damages, and losses.

61. Defendant's conduct was engaged in with malice or with reckless indifference to Plaintiffs' rights pursuant to CADA.

### SECOND CLAIM FOR RELIEF
### Sex/Family Responsibilities Discrimination in Violation of CADA
### (Both Plaintiffs against Defendant)

62. Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

63. Plaintiff Rhoads and Plaintiff Maneotis are both women and, as such, are both members of the class of persons protected from sex discrimination under CADA.

64. Plaintiff Rhoads and Plaintiff Maneotis were both women with small children and the attendant family responsibilities during some or all of the relevant time periods and, thus, were both members of the class of persons protected from sex/family responsibilities discrimination under CADA.

65. At all relevant times, Plaintiffs performed the functions of their jobs competently and were qualified for their positions with Defendant.

66. Plaintiff Rhoads was passed over for promotions, demoted, the terms and conditions of her employment were materially modified, and she was ultimately constructively terminated because of her sex and/or her status as a woman with small children. Plaintiff Maneotis was passed over for promotion because of her sex and/or her status as a woman with small children.

67. Plaintiffs' sex and/or their status as women with small children were the motivating factors in Defendant's conduct causing Plaintiffs' damages.

68. Defendant is liable for the acts and omissions of its agents and employees. Defendant, by and through its agents, discriminated against Plaintiffs on the basis of their sex and/or their status as women with small children.

69. As a result of Defendant's conduct, Plaintiffs have suffered significant injuries, damages, and losses.

70. Defendant's conduct was engaged in with malice or with reckless indifference to Plaintiffs' rights pursuant to CADA.

### THIRD CLAIM FOR RELIEF
### Discrimination in Violation of the PWFA Amendments to CADA
### (Plaintiff Rhoads against Defendant)

71. Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

72. Plaintiff Rhoads and Plaintiff Maneotis are both women and, as such, are both members of the class of persons protected from sex discrimination under CADA.

73. Plaintiff Rhoads was a pregnant woman and a woman recovering from childbirth during some or all of the relevant time periods and, thus, was a member of the class of persons protected under the Pregnant Workers Fairness Act Amendments to CADA.

74. At all relevant times, Plaintiff performed the functions of her job competently and was qualified for her position with Defendant.

75. Defendant, by and through its agents, failed to provide reasonable accommodations for Plaintiff Rhoads' recovery from childbirth that would have allowed her to continue working, instead forcing her to take leave that she did not request or need.

76. Plaintiff's sex and/or her status as pregnant woman and/or as a woman recovering from childbirth were the motivating factors in Defendant's conduct causing Plaintiff's damages.

77. Defendant is liable for the acts and omissions of its agents and employees.

78. As a result of Defendant's conduct, Plaintiff has suffered significant injuries, damages, and losses.

79. Defendant's conduct was engaged in willfully, with malice and/or with reckless indifference to Plaintiff's rights pursuant to CADA.

### FOURTH CLAIM FOR RELIEF
### Interference in Violation of the FMLA
### (Plaintiff Rhoads against Defendant)

80. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

81. Plaintiff Rhoads was an eligible employee within the meaning of the FMLA at all relevant times.

82. Defendant was an employer within the meaning of the FMLA at all relevant times.

83. Plaintiff Rhoads was entitled to protected leave under the FMLA for the birth of her child in January 2017.

84. Defendant knew or reasonably should have known of Plaintiff's eligibility for and intent to take FMLA-protected leave following the birth of her child.

85. Defendant interfered with Plaintiff's rights under the FMLA by failing to restore her to her position at the conclusion of her protected leave, and instead, demoting her into a position with materially different working conditions, including travel requirements, than she had prior to her exercise of her rights under the FMLA.

86. Defendant is liable for the acts or omissions of its agents.

87. Defendant's interference with Plaintiff's rights under the FMLA has caused her significant damages.

### FIFTH CLAIM FOR RELIEF
### Willful Retaliation in Violation of the FMLA
### (Plaintiff Rhoads against Defendant)

88. Plaintiff Rhoads hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

89. Plaintiff Rhoads exercised her rights under the FMLA when she took protected FMLA leave following the birth of her child.

90. After Plaintiff Rhoads exercised her rights under the FMLA, Defendant willfully retaliated against her by, *inter alia*, failing to restore her to her position or a substantially similar position, failing to promote her into open positions for which she was qualified, demoting her to a position with less stature and with materially different and significantly less desirable working conditions, including demanding travel requirements, and ultimately constructively terminating her employment.

91. Defendant's retaliation against Plaintiff Rhoads occurred because of and in response to her exercise of her rights under the FMLA.

92. Defendant is liable for the acts and omissions of its agents.

93. Defendant, either directly or by and through its agents, retaliated against Plaintiff Rhoads causing her significant injuries, damages and losses.

94. Defendant's conduct was engaged in willfully, with malice and/or with reckless indifference to Plaintiff's rights under the FMLA.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, and award them all relief as allowed by law and equity, including, but not limited to the following:

a. Back pay, in amounts to be determined at trial;
b. Front pay, in lieu of reinstatement;
c. Compensatory and consequential damages, including but not limited to emotional distress damages, in amounts to be determined at trial;
d. Injunctive or equitable relief as appropriate;
e. Attorney's fees and costs, including expert costs, as provided for by law;
f. Liquidated damages for all claims as allowed by law and as determined at trial;
g. Pre- and post-judgment interest at the highest lawful rates; and
h. Such further relief as justice requires or the law allows.

**PLAINTIFFS REQUEST A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED this 23rd day of October, 2018.

Respectfully submitted,

Riley Law LLC
_/s/Kelli Riley_____
Kelli Riley, CO. Bar # 44828
2017 9th Street
Greeley, CO 80631
Telephone: (970) 515-5932
kelli@rileylawllc.com

ATTORNEY FOR PLAINTIFFS

11